**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LUIS CANDELARIO,<br><br>  Plaintiff,<br><br>  v.<br><br>METROPOLITAN LIFE INSURANCE CO., ET. AL.,<br><br>  Defendants. | CIV. NO. 10-1463(PG) |

**OPINION AND ORDER**

Before the Court stands Metropolitan Life Insurance Company ("MetLife") and Wyeth Pharmaceutical Company's ("Wyeth") (collectively, "Defendants") motion of summary judgment, as well as Luis Candelario's ("Candelario" or "Plaintiff") response thereto and Defendants' reply. Candelario commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, challenging the denial of long-term disability ("LTD") benefits under a group policy issued to Wyeth, Candelario's former employer, by MetLife. For the reasons explained below, Defendants' motion for summary judgment is hereby **DENIED**.

**I. Background**

The following factual narrative is derived from facts that are deemed uncontested by the Court because they were included in the motion for summary judgment and were agreed upon or properly supported by the evidence and not genuinely opposed. The Court emphasizes only facts considered material and non-repetitive.

Plaintiff was an employee of Wyeth. Wyeth maintained an employee welfare plan for its employees that is regulated by ERISA. 29 U.S.C. § 1001 *et. seq.* Said plan provides for the payment of LTD benefits to participants who become disabled. The plan defines the term "disability" and outlines other requirements. LTD benefits are provided through a group insurance policy issued by MetLife. Plaintiff alleges that on February, 1999, he suffered an accident that physically and mentally incapacitated him. Defendants posit that Candelario's group policy has a three-year contractual limitations period for

legal actions to recover LTD benefits and that the limitations period commenced on January 1, 2000 and concluded on January 1, 2003. However, Candelario contends that Defendants never provided him with disclosures regarding his rights under the LTD plan or in the alternative, that Defendants unjustifiably denied him the benefits of the disability policy. As a result, Candelario avers that the contractual limitations period is effectively tolled.

## II. Discussion

### A. Motion for Summary Judgment Standard

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir.2008)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a disputed fact to be considered material it must have the potential "to affect the outcome of the suit under governing law. Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (citing Liberty Lobby, Inc., 477 U.S. at 247-248); Prescott, 538 F.3d at 40 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The ethos of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing FED. R. CIV. P. 56 (e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. Shalala, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The nonmovant may not defeat a "properly focused motion for

summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" Garside v. Osco Drug,Inc., 895 F.2d 46, 48 (1st Cir. 1990); see also Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a nonmovant may shut down a summary judgment motion only upon a showing that a trialworthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Liberty Lobby, Inc., 477 U.S. at 247-248. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the nonmovant for a jury to return a verdict in its favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). The burden placed upon the nonmovant is one of production rather than persuasion. In other words, in weighing a nonmovant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

**B. Liability for Plan Administrators**

ERISA governs employee benefit plans "if it is established or maintained--

> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

Civ. No. 10-1463 (PG)                                                      Page 4

(3) by both."

29 U.S.C. § 1003(a). ERISA defines a welfare plan as:

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services..."

29 U.S.C. § 1002(1). Furthermore, "[l]ong-term disability plans provided to employees by their employer are employee welfare benefit plans regulated by ERISA." Metropolitan Life Ins. Co. v. Colón-Rivera, 204 F. Supp. 2d 273, 277 (D.P.R. 2002) (citing Díaz López v. Commonwealth Oil Refining Co., Inc., 833 F. Supp. 86, 88 (D.P.R. 1993), *aff'd*, 29 F.3d 619 (1st Cir. 1994), *cert. denied*, 513 U.S. 1025 (1994); Cintrón Parrilla v. Lilly Del Caribe, Inc., 32 F. Supp. 2d 35, 37 (D.P.R. 1998). "[I]t is clearly established in this Circuit that disability and medical benefit plans provided to employees by an employer are welfare benefits subject to ERISA." Id.

ERISA empowers a participant or beneficiary to bring civil action in order to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 28 U.S.C. § 1132 (a)(1)(B). "No federal statute of limitations exists for ERISA lawsuits filed under § 1132." Nazario Martínez v. Johnson & Johnson Baby Products, Inc., 184 F. Supp. 2d 157, 159 (D.P.R. 2002). "In cases such as this the Court has to borrow the most analogous statute of limitations from the jurisdiction where it sits to apply to § 1132 claims." Id. (citing Wilson v. Garcia, 471 U.S. 261 (1985)). The Court has already confronted this issue and held that the statute of limitations in this District is the residual contract statute found in the

Puerto Rico Civil Code, 31 P.R. LAWS ANN. § 5294, which provides fifteen years for any action for which no special term of prescription has been fixed and has been designated as the catch-all provision for contract disputes in Puerto Rico. Id. at 162. (internal quotation marks omitted).

"Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period, provided the limitations period is reasonable." Rios-Coriano v. Hartford Life and Acc. Ins. Co., 642 F. Supp.2d 80, 83 (D. P.R. 2009) (citing Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301, 1303 (11th Cir. 1998)). Defendants cite to Section B(4) of the Group Insurance Certificate (Docket No. 13, Exhibit 3, Page No. 6) as evidence that Plaintiff's claim is effectively barred. Section B(4) of the Group Insurance Certificate states that an action at law or in equity shall not "be brought at all unless brought within three years from the expiration of the time within which proof of claim is required by the Group Policy." (Docket No. 13, Exhibit 3, Page No. 6).

Defendant's further argue that Candelario's suit is misplaced because they are not the plan administrators. In the First Circuit, the proper party defendant in an action concerning ERISA benefits is the party that controls the administration of the plan. Cintrón-Serrano v. Bristol-Myers Squibb P. R., Inc., 497 F. Supp. 2d 272, 275 (D.P.R. 2007). If an entity other than the named plan administrator makes the final benefits eligibility determination, then that entity functions as the plan administrator for purposes of an ERISA benefits claim. Id. Furthermore, 29 U.S.C. § 1022 imposes a duty to provide program participants with a Summary Plan Description ("SPD") only upon the plan administrator. Stuart v. Metropolitan Life Ins. Co., 664 F. Supp. 619, 621 (D. Me. 1987), *aff'd*, 849 F.2d 1534 (1st Cir. 1988), *cert. denied*, 488 U.S. 968 (1988) (citing 29 U.S.C. § 1022).

In the case at hand, American Home Products Corporation is the plan administrator. (Docket No. 13, Exhibit 2). However, it seems that MetLife was responsible for the final benefits eligibility determination. (Docket No. 13, Exhibit 3). As a result, the Court is unable to grant summary judgment. The Court declines to dismiss on this ground due to its understanding that it requires further explanation of how the final eligibility determination was conducted under the plan. Similarly, the Court is reluctant to dismiss Wyeth

on grounds that it was not the plan administrator without a more complete explanation of how the final eligibility determinations were made.

## C. Equitable Relief

Section 502(a)(1)(B) empowers a participant or beneficiary to bring suit to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) allows a participant, beneficiary, or fiduciary to sue to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. Id. § 1132(a)(3).

Plaintiff's complaint states that he is seeking a monetary judgment award for the benefits due to him pursuant to § 502(a)(1)(B).[1] Plaintiff's motion in opposition to summary judgment requests equitable tolling of the three-year contractual limitation. Plaintiff asserts that he is entitled to equitable tolling because Defendants misled him into failing to take action that would have enabled him to receive benefits under the insurance plan.

Plaintiff has properly substantiated his claim that he did not receive a copy of the LTD plan or the SPD. (Docket No. 14-1, Exhibit I). Moreover, the Court does not agree with Defendants' argument that Plaintiff's claim that he did not receive a copy of the LTD plan or the SPD is an inconsequential formality.

Defendants argue that equitable estoppel is not applicable on these facts. Defendants cite to Ortega-Candelaria v. Johnson & Johnson, Civil No. 08-2382 (JAF) (D.P.R. June 25, 2009), for the basis of their argument. However, Ortega-Candelaria stands for the proposition that a defendant does

---

[1] Defendants talk at length about Amschwand v. Spherion Corp., and cite to this case in their efforts to convince the Court that Plaintiff is not entitled to equitable relief. 505 F.3d 342 (5th Cir. 2007). The Amschwand decision concluded that, "under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), other appropriate equitable relief permits recovery of extracontractual, or make-whole, damages in the form of payment of life insurance benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty" was not permissible. Id. at 343 (internal quotation marks omitted). As a result, the Court finds that Defendants' argument misses the point. Defendants cite to a case that addresses a different section from the one in dispute in this case and finds it unnecessary to delve into Amschwand's line of analysis.

not have the duty to instruct the plaintiff on the law. Id. at 3. Defendants also cite Ortega-Candelaria for the proposition that under civil law the principle of caducity disallows any tolling of the contractual statute of limitations. In Ortega-Candelaria, our sister court stated that a contractual modification creates a period of caducity under civil law that permits no interruption. Id. at * 3. However, our sister court went on to address the plaintiff's claims and did not discuss the issue of caducity any further. The Court does not find that the concept of civil law caducity is applicable to the discussion at hand because there is no contractual modification. Furthermore, the Court finds that the discussion of caducity in Ortega-Candelaria is entirely misplaced.

Similarly, the Court finds that Defendants' reliance on Radford v. General Dynamics Corp., is also misplaced. 151 F.3d 396 (5th Cir. 1998). Radford addressed whether or not the statute of limitations should be tolled while administrative remedies are being exhausted. The issue at hand is rather different. Furthermore, "ERISA contains no statute of repose applicable to claims arising under § 502 of the Act, and nothing in that section of the statute suggests that the doctrine of equitable tolling is in any way inconsistent with the statute's purpose." Pettaway v. Teachers Ins. and Annuity Ass'n of America, 547 F.Supp.2d 1, 7 (D.D.C. 2008). Therefore, the Court does not find that Radford is controlling.

To establish that the court should apply the doctrine of equitable estoppel, the party asserting the estoppel must show: 1) the party to be estopped from asserting an untimeliness defense knew the facts; 2) the party to be estopped intended that his conduct be acted on or acted in a way that the party asserting the estoppel has a right to believe it was so intended; 3) the party requesting the application of estoppel was ignorant of the true facts; and 4) the party requesting the application of estoppel relied on the other party's conduct to his detriment." Morales-De-Jesús v. Metropolitan Life Ins. Co, No. 09-2156, 2010 WL 5175179 (1st Cir., Dec. 22, 2010)(citing Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 73 (1st Cir. 2005)).

The Court agrees with the approach adopted in Ephraim v. Hartford Life and Accident Ins. Co., C.A. No. 10-192S, 2011 U.S. Dist. Lexis 2789 (D.R.I. Dec. 15, 2010). In Ephraim, the District Court of Rhode Island concluded on

similar facts that the plaintiff had submitted sufficient evidence to establish a *prima facie* case of equitable estoppel sufficient to withstand the entry of summary judgment. Candelario was notified that his LTD claim was denied as evidenced by the October 4, 2001, letter. (Docket No. 19, Exhibit 1). However, said letter did not specifically or generally notify Candelario of the contractual limitations period for filing an ERISA action contained in the policy. Therefore, the Court concludes that Candelario has made a *prima facie* case of equitable estoppel sufficient to withstand Defendants' dispositive motion. The Court recognizes that there are existing factual issues that will determine whether or not equitable estoppel is warranted. The Court's only conclusion at this juncture is that Candelario has produced sufficient evidence that, if believed and viewed in the light most favorable to him, rebuts Defendants' limitations defense and presents a factual issue as to whether or not Defendants should be estopped from relying upon the policy's limitations period. See Ephraim, C.A. No. 10-192S, 2011 U.S. Dist. Lexis 2789 at *4.

### III. Conclusion

For the reasons explained above, the Court **DENIES** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 30, 2011.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. District Judge
